**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-02394-WJM-CBS
(Consolidated with Civil Action Nos. 11-cv-2395, 11-cv-2396 and 11-cv-2397)

ANA ALICIA ORTEGA,
KELLY BOREN,
KRISTAL CARILLO and
SHARELLE C. THOMAS,

    Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, a municipality,
OFFICER RICKY NIXON, in his individual and official capacity, and
OFFICER KEVIN DEVINE, in his individual and official capacity,

    Defendants.

---

**ORDER ON DEFENDANT NIXON AND DEVINE'S MOTION
FOR PARTIAL SUMMARY JUDGMENT**

---

In this consolidated civil rights case, Plaintiffs Ann Alicia Ortega, Kelly Boren, Kristal Carillo, and Sharelle Thomas (collectively "Plaintiffs") bring claims against the City and County of Denver ("CCD") and Officers Ricky Nixon and Kevin Devine (together "Defendants"[1]) arising out of an incident outside of the Denver Diner on July 11, 2009.  (Compl. (ECF No. 2).)

Before the Court is Defendants Nixon and Devine's Motion for Partial Summary Judgment ("Motion").  (ECF No. 60.)  For the reasons set forth below, the Motion is granted in part and denied in part.

---

[1] Although CCD is also a Defendant in this action, they are not party to the instant Motion.  Therefore, the Court's reference to "Defendants" in this Order does not include CCD.

## I. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTUAL BACKGROUND[2]

Plaintiffs Ana Ortega (f/k/a Ana Perez) and Kristal Carrillo were at the Denver Diner on July 12, 2009. (Compl. (ECF No. 2) ¶ 11.) Ms. Carrillo got into a shoving match with another customer and was forcibly taken outside of the Diner by Defendant Nixon, a Denver police officer who was working as an off-duty security officer at the

---

[2] The factual background in this Order is brief and taken primarily from the Statement of Disputed Facts sections of the parties' briefs on the Motion. Where necessary to provide background or context, the Court has supplemented with facts from the Complaint.

Denver Diner.  (*Id*. ¶¶ 16-17.)  Ms. Carrillo followed Nixon and Ortega outside.  (*Id*. ¶ 18.)

Shortly thereafter, Plaintiffs Kelly Boren and Sharelle Thomas arrived at the Denver Diner.  (*Id*. ¶ 23.)  They observed the fracas between Nixon and Ortega from near the door to the Diner.  While watching in a crowd of people, Ms. Thomas was shoved from behind by Officer Devine, who was arriving on the scene to assist Nixon.  (*Id*. ¶ 29.)  The scene was chaotic and, after being shoved, Ms. Thomas turned and her elbow hit Officer Devine.  (Thomas Dep. (ECF No. 64-6) p. 81-82.)  Thomas said "Hey, what's that all about?" and told Devine that he did not have to push her.  (Spencer Dep. (ECF Nos. 60-1 & 64-7) p. 81.)  Devine pulled Thomas from the crowd.  (Thomas Dep. at 220.)

Kelly Boren then approached Nixon to tell him that she thought his actions were wrong.  (Boren Dep. (ECF No. 64-4) pp. 256-57.)  Nixon told Boren that she needed to leave or he would put her in jail.  (*Id*.; ECF No. 60-6.)  Boren made no effort to leave and said: "Well, then jail me."  (Boren Dep. at 257.)  Boren was arrested and charged with one count of failure to obey a lawful order.  (ECF No. 60-6.)

As part of the crowd watching the events unfold, Ortega was asked to back away more than once.  (Ortega Dep. (ECF Nos. 60-5 & 64-3) pp. 229.)  Although she was initially compliant, later returned and refused to leave.  (*Id*.)  Ortega then approached Devine and asked him to stop hurting people.  (*Id*. at 222-23.)  As Ortega walked up to Devine, her hands got within a few inches of Devine's baton.  (*Id*. at 224.)  Ortega was arrested by Devine and charged with one count of failure to obey a lawful order.  (ECF

3

No. 60-7.)   On July 17, 2009, without the assistance of an attorney, Ortega entered into a deferred judgment agreement. (ECF No. 60-9.) Consistent with this agreement, Ortega pled guilty to Failure to Obey a Lawful Order in violation of Denver Revised Municipal Code § 38-31(c). (*Id.*) Ortega was sentenced to sixteen hours of community service, placed on unsupervised probation for one year, and charged fines and costs of $75.00. (*Id.*)

On October 7, 2009, Kelly Boren—represented by counsel—entered into a deferred judgment agreement. (ECF No. 60-8.) Boren pled guilty to one count of Failure to Obey a Lawful Order in violation of Denver Revised Municipal Code § 38-31(c). (*Id.*) Boren was sentenced to one year unsupervised probation, twenty-four hours of community service, and charged fines and costs of $216.00. (*Id.*)

The events at issue in this case were captured by a HALO ("High Activity Location Observation") camera. (Compl. ¶ 1.) Though the Denver Police Department was in custody of the videotape from the HALO camera during the pendency of Boren's and Ortega's criminal proceedings, it did not notify them of the existence of the video or provide them with a copy. (Clark Dep. (ECF No. 64-2) pp. 49-53.)

On October 1, 2010, based on Boren's successful completion of all of the terms of her sentence, her guilty plea was withdrawn and her case was dismissed with prejudice. (ECF No. 64-12.) Ortega also successfully completed her sentence and had her guilty plea withdrawn and case dismissed. (*Id.*)

### III.  ANALYSIS

On these facts (and the additional facts alleged in the Complaint), Plaintiffs bring

the following claims: (1) Excessive Force in violation of 42 U.S.C. § 1983; (2) False Arrest/Unlawful Seizure in violation of 42 U.S.C. § 1983; (3) Retaliation in violation of the First Amendment to the United States Constitution; (4) Destruction and/or Hiding of Exculpatory Evidence in violation of 42 U.S.C. § 1983; (5) Manufacture of Inculpatory Evidence in violation of 42 U.S.C. § 1983; (6) Malicious and Vindictive Prosecution in violation of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983; and (7) Conspiracy to Violate Civil Rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. (Compl. ¶¶ 151-236.)  Plaintiff Thomas also brings a claim for racial discrimination. (Case No. 1:11-cv-2397-WJM-CBS, ECF No. 2 at 35.)

In the Motion, Defendants seek summary judgment on all but the excessive force claim.  (ECF No. 60.)  In their combined response, Plaintiffs voluntarily dismiss the following claims: (1) all Plaintiffs dismiss their conspiracy claims; (2) Plaintiff Thomas dismisses her race discrimination claim; and (3) Plaintiff Carrillo dismisses her First Amendment retaliation claim.  (ECF No. 64 at 27-28.)

The Court will address each of the remaining claims in turn below.

**A.      False Arrest/Unlawful Seizure**

Defendants move for summary judgment on Plaintiffs Ortega and Bowen's false arrest/unlawful seizure claims[3] because Ortega and Boren each pled guilty to one count of Failure to Obey a Lawful Order in violation of Denver Revised Municipal Code § 38-31(c).  (ECF No. 60 at 6.)  Specifically, Defendants contend that, because of this guilty

---

[3]  Plaintiff Thomas also brings a claim for false arrest/unlawful seizure but Defendants have not moved for summary judgment on this claim.  (Case No. 1:11-cv-2397-WJM-CBS, ECF No. 2.)

5

plea, Plaintiffs are precluded from bringing these claims based on the doctrine of collateral estoppel and/or the case law arising out of *Heck v. Humphrey*, 512 U.S. 477 (1994). (*Id.*)

    1.    <u>Collateral Estoppel</u>

To determine whether collateral estoppel precludes the Plaintiffs' claims in this case, the Court must apply Colorado law. *See In re Young*, 91 F.3d 1367, 1374 (10th Cir. 1996) ("in determining the collateral estoppel effect of a state court judgment, federal courts must . . . apply the state's law of collateral estoppel"). In Colorado, collateral estoppel bars relitigation of an issue if:

> (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

*Michaelson v. Michaelson*, 884 P.2d 695, 700-01 (Colo. 1994). The burden of establishing these elements rests with the party seeking preclusion, in this case Defendants. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 85 (Colo. 1999).

It is undisputed that Plaintiffs entered guilty pleas to the criminal offense of Failure to Obey a Lawful Order for the incidents at issue in this case. Based on this plea, Plaintiffs do not dispute that the first three elements of the collateral estoppel test have been satisfied here. (ECF No. 64 at 8-10.) However, Plaintiffs argue that the fourth element has not been satisfied because the state court criminal proceedings did not afford Plaintiffs a full and fair opportunity to litigate the issues. (*Id.*) Specifically,

Plaintiffs contend that they were not provided with the video tapes from the HALO cameras before they entered their guilty pleas and, therefore, such pleas were not entered after a "full and fair" opportunity to be heard. (*Id.*)

The Colorado Supreme Court has held that "[a]n inquiry into whether a party received a full and fair opportunity to litigate an issue must look to whether the initial proceeding was so inadequate or so narrow in focus as to deprive an individual of his or her due process rights should application of the doctrine of collateral estoppel be used to bar relitigation of that issue." *Bebo Constr.*, 990 P.2d at 87. The United States Supreme Court has recognized that collateral estoppel does not apply when there was not a "full and fair opportunity" to litigate an issue and that "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 480-81 (1982) (internal citation and quotation omitted).

It is well established that the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution requires that a prosecutor disclose any material exculpatory evidence to a criminal defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Moreover, Colorado Rules of Criminal Procedure require that a prosecuting attorney disclose to the defense "any material or information within his or her possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce the punishment therefor." Colo. R. Crim. P. 16(a)(2). This disclosure requirement is self-executing and does not require that the defense request the exculpatory material. *See People v. District Court of El Paso Cty.*, 790 P.2d 332, 337 (Colo. 1990). Exculpatory evidence must be provided to a criminal defendant at

7

such a time so as to be useful to the defendant for preparation of their defense. *See United States v. Scarborough*, 128 F.3d 1373, 1376 (10th Cir. 1997).

It is undisputed that the prosecutors did not disclose the HALO videotape evidence to Plaintiffs before they entered their guilty pleas. Plaintiffs contend that, had this evidence been disclosed, they would not have entered into the deferred judgment agreements, which resulted in their guilty pleas. (Dave Aff. (ECF No. 64-5) ¶ 10.) Defendants offer no evidence to rebut this contention and do not dispute Plaintiffs' contention that the HALO video would have been exculpatory to Plaintiffs in their criminal cases. The Court finds that the failure to provide this exculpatory evidence to Plaintiffs reasonably calls into question whether their state court criminal proceedings were a "full and fair" opportunity to litigate the issues.

In support of their argument that collateral estoppel applies here, Defendants rely heavily on *Jiron v. City of Lakewood*, 392 F.3d 410 (10th Cir. 2004). The Court acknowledges that the *Jiron* court stated that "a party who has pled guilty to a criminal in Colorado state court is collaterally estopped from relitigating the elements of that crime in a civil proceeding." *Id*. at 417. However, this statement came in the context of a discussion of the first prong of the collateral estoppel test had been met. *Id*. The Tenth Circuit held that a guilty plea to a crime necessarily involved the "actual determination" of all of the elements of the crime and that, "because the other elements of collateral estoppel are satisfied", the plaintiff was collaterally estopped from relitigating an element of the crime. *Id*.

The *Jiron* court did not actually address any of the remaining three elements,

including whether the plaintiff in that case had a full and fair opportunity to litigate the issues. In *Jiron*, there was no implication that the underlying criminal action was less than fair and, therefore, no discussion of the fourth prong of the collateral estoppel test was necessary. On this basis, the Court finds that *Jiron* is distinguishable from the instant action.

As previously stated, Defendants bear the burden of establishing all of the elements of collateral estoppel. *See Bebo Constr.*, 990 P.2d at 85. Given the significant issues raised by Plaintiffs regarding the whether their prior criminal convictions came after a "full and fair opportunity" to be heard, and the fact that Defendants have not rebutted the evidence presented by Plaintiffs on this issue, the Court finds that Defendants have not met their burden of establishing the applicability of the collateral estoppel doctrine to these claims. Plaintiffs Ortega and Bowen are therefore not collaterally estopped from pursuing their false arrest/unlawful seizure claims.

    2.    <u>*Heck v. Humphrey* and its progeny</u>

Defendants next contend that the preclusion doctrine first announced in *Heck v. Humphrey*, 512 U.S. 477 (1994) also bars Plaintiffs' false arrest/unlawful seizure claims because of Plaintiffs' prior guilty pleas. In *Heck*, the United States Supreme Court held:

> in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district

court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487; *see also Smith v. Gonzales*, 222 F.3d 1220, 1222 (10th Cir. 2000) ("A plaintiff may not bring a civil rights suit if a favorable result in the suit would necessarily demonstrate the invalidity of an outstanding criminal judgment against the plaintiff.").

Plaintiffs contend that the Tenth Circuit has narrowly interpreted *Heck* and that *Heck* does not bar their claims because a *habeas corpus* remedy was not available to them. (ECF No. 64 at 20.) In *Cohen v. Longshore*, 621 F.3d 1311 (10th Cir. 2010), the Tenth Circuit held that "a petitioner who has no available remedy in habeas, through no lack of diligence on his part, is not barred by *Heck* from pursuing a § 1983 claim." *Id*. at 1317; *see also Morris v. Noe*, 672 F.3d 1185, 1193 n.2 (10th Cir. 2012) ("Because [plaintiff] was never in custody, but merely received a citation, *Heck* does not bar Plaintiff's unlawful arrest claim."). It is undisputed that Plaintiffs Ortega and Bowen were sentenced to one year unsupervised probation, community service, and ordered to pay fines. Because these Plaintiffs were never imprisoned following their convictions, they could not have had these convictions overturned via a *habeas corpus* proceeding. *See Ferry v. Gonzalez*, 457 F.3d 1117, 1132 (10th Cir. 2006) (habeas petition is moot when detainee no longer in custody).

Accordingly, the Court finds that Plaintiffs Ortega and Bowen's false arrest/unlawful seizure claims are not barred by *Heck* and its progeny.

### 3. Qualified Immunity

With respect to Plaintiffs' false arrest/unlawful seizure claims, the only arguments raised by Defendants in their briefing on the Motion are discussed above, *i.e.*, collateral estoppel and preclusion based on *Heck v. Humphrey*. (ECF No. 60 at 6-9.) However, Defendants assert in the both the opening and reply briefs that, based on collateral estoppel and/or *Heck*, Defendants are entitled to "qualified immunity". (ECF Nos. 60 at 6, 8 & 9; ECF No. 68 at 6.)

Qualified immunity is an affirmative defense that is completely separate and apart from the affirmative defenses of collateral estoppel and preclusion based on *Heck*. *See Suasnavas v. Stover*, 196 F. App'x 647, 652 (10th Cir. 2006). While collateral estoppel and *Heck* both require the Court to evaluate the effect of a prior state court criminal proceeding on the instant civil action, qualified immunity revolves around a completely different set of facts. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223 (2009) (quotation omitted). Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* at 232 (internal citations omitted). "Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id*.

Though Defendants argue that they are entitled to "qualified immunity", their

opening brief contains no argument related to the two-prong inquiry set forth above.[4] Defendants do not contend that Plaintiffs failed to show a violation of a constitutional right or that such constitutional right was not clearly established. The briefing on the Motion is simply devoid of such analysis. Therefore, the Court finds that Defendants have not raised qualified immunity as an affirmative defense in the instant Motion.

That Defendants have not asserted qualified immunity in response to Plaintiff's false arrest/unlawful seizure claims is significant because of the right to appeal the denial of qualified immunity on an interlocutory basis. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). There is no right to interlocutory appeal of the denial of collateral estoppel or the application of *Heck*. *See Suasnavas*, 196 F. App'x at 653 ("the denial of a collateral estoppel motion to dismiss is not a collateral order appealable under 28 U.S.C. § 1291."); *Cunningham v. Gates*, 229 F.3d 1271, 1285 (9th Cir. 2000) (no right to interlocutory appeal denial of motion based on *Heck*). Because Defendants have not raised qualified immunity as an affirmative defense, they have no right to appeal—on an interlocutory basis—this aspect of the Court's denial of summary judgment.

For the reasons set forth above, the Court denies Defendants' Motion for Summary

---

[4] The Court notes that Plaintiffs address the two prongs of qualified immunity in their opposition brief and Defendants reply to Plaintiffs' contentions. (ECF No. 64 at 22-23; ECF No. 68 at 7-8.) However, raising the issue in a reply brief is insufficient. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) ("[A]ppellant failed to raise this issue in his opening brief and, hence has waived the point.") Moreover, even in the Reply Brief, Defendants fail to elaborate on their qualified immunity argument and state only that, because collateral estoppel bars Plaintiffs from relitigating whether Defendants had probable cause to arrest Plaintiffs, "there could be no constitutional violation and Defendant Officers are entitled to qualified immunity." (ECF No. 68 at 7.) This bare assertion is insufficient to raise the defense of qualified immunity in the instant motion. *See Sports Racing Servs., Inc v. Sports Car Club of Am., Inc.*, 131 F.3d 874h, 880 n.9 (10th Cir. 1997) (holding that party who noted issue and made "several broad, conclusory statements" on appeal waived argument for failure to develop).

Judgment in so far as it pertains to Plaintiffs' false arrest/unlawful seizure claims.

**B.     Malicious Prosecution**

Defendants next move for summary judgment on Plaintiff Ortega's and Bowen's claims for malicious prosecution. (ECF No. 60 at 10-12.)

To survive summary judgment on their malicious prosecution claims, Plaintiffs must show a genuine dispute of fact as to the following elements:

> (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.

*Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008).

In the Motion, Defendants focus on the second prong—whether Plaintiffs have shown that the original action terminated in their favor. (ECF No. 60 at 10.) Plaintiffs contend that there is a dispute of fact regarding whether their criminal cases terminated in their favor because they entered deferred judgment pleas and the claims against them were ultimately dismissed. (ECF No. 64 at 24-25.)

Plaintiffs cite no case law supporting their contention that the fact that Plaintiffs' state court criminal cases were ultimately dismissed creates a dispute of fact as to whether their cases terminated in their favor. On summary judgment, establishing a dispute of fact is the plaintiff's burden. *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). Plaintiffs do not dispute that they entered guilty pleas, were sentenced to a term of unsupervised probation, required to perform community service hours, and fined. It was only after they

completed each aspect of their sentence that their cases were dismissed. Again, Plaintiffs fail to cite any case law supporting their contention that a situation of this type is favorable termination.[5]

Because the undisputed facts show that the Plaintiffs were required to pay a fine, complete community service, and successfully complete a term of unsupervised probation, the Court finds that there is no dispute of fact as to whether their state court criminal actions terminated in their favor. *See DeLeon v. City of Corpus Christi*, 488 F.3d 649, 655-56 (5th Cir. 2007) ("a deferred adjudication order is a conviction for the purposes of [the] favorable termination rule.").

Because Plaintiffs have failed to show a genuine dispute of fact as to an essential element of their malicious prosecution claims, the Court grants Defendants' Motion for Summary Judgment as to these claims.

## C. Destruction and Hiding of Exculpatory Evidence and Manufacture of Inculpatory Evidence

With respect to Plaintiffs' claims for destruction and/or hiding of exculpatory evidence and manufacture of inculpatory evidence, Defendants raise the same arguments as addressed above in the context of malicious prosecution. (ECF No. 60 at 12.) Defendants contend that these claims "are not separate claims in and of themselves" but are simply different ways to restate the malicious prosecution claims. (*Id*.)

---

[5] The Court finds that Colorado's deferred judgment statute is distinguishable from the Kansas diversion statute discussed in *Vasquez Arroyo v. Starks*, 589 F.3d 1091 (10th Cir. 2009). The Kansas diversion statute is a pre-trial mechanism; a defendant who enters into a diversion agreement does not enter a plea. *See State v. Chamberlain*, 120 P.3d 319, 323 (Kan. 2005). Under Colorado's deferred judgment statute, a defendant must plead guilty and successfully complete all aspects of her sentence before the case can be dismissed. *See* Denver Revised Municipal Code § 14-66(a).

In their Response to the Motion, Plaintiffs fail to address any aspect of their claims for destruction and/or hiding of exculpatory evidence and manufacture of inculpatory evidence. (ECF No. 64.) As the Court has previously stated, once Defendants move for summary judgment on a claim, it is Plaintiffs' burden to come forward with sufficient evidence to show a trial-worthy dispute of fact as to that claim. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Plaintiffs have failed to do so here.

Accordingly, Defendants' Motion for Summary Judgment is granted with respect to Plaintiffs' claims for destruction and/or hiding of exculpatory evidence and the manufacture of inculpatory evidence.

**D.     First Amendment Retaliation**

Plaintiffs Boren, Ortega, and Thomas bring claims for retaliation in violation of the First Amendment.[6] Defendants move for summary judgment on these claims and also assert qualified immunity.

As stated above, qualified immunity is a two-part affirmative defense. *Pearson v. Callahan*, 555 U.S. 223 (2009). "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id.* at 232 (internal citations omitted). "Second, . . . the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* A reviewing court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in

---

[6] In Plaintiffs' Opposition, Plaintiff Carillo voluntarily dismisses her First Amendment retaliation claim. (ECF No. 64 at 28.)

the particular case at hand." *Id*. at 236. Qualified immunity is applicable unless the plaintiff can satisfy both prongs of the inquiry. *Id.* at 232.

To show a violation of their First Amendment rights, Plaintiffs must satisfy the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000).

The Court finds that Plaintiffs have shown that they engaged in protected activity. Plaintiffs allege that, on the night in question, they were voicing their disapproval of Nixon's and Devine's actions. (ECF No. 64 at 27.) The Supreme Court has held: "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill v. United States*, 482 U.S. 451, 462-63 (1987). Thus, the Court finds that protesting police conduct is protected activity.

It is undisputed that Plaintiffs Boren and Ortega were arrested by Defendants. The Court finds that being arrested and charged with a criminal offense is an injury that would chill a person of ordinary firmness from critiquing police behaviors. *See McCormick v. City of Lawrence*, 253 F. Supp. 2d 1172, 1196 (D. Kan. 2003). Therefore, Plaintiffs Boren and Ortega have satisfied the second element.

However, Plaintiff Thomas has failed to come forward with any evidence showing

that she was subjected to an injury that would chill a person of ordinary firmness from engaging in a protected activity. Thomas was not arrested by Defendants. The Court recognizes that the Complaint contains allegations of mistreatment towards Thomas. (*See* ECF No. 1 ¶¶ 35-41.) However, on summary judgment, a party cannot rely solely on allegations in a complaint. *See* Fed. R. Civ. P. 56(c)(1). Plaintiffs' Response to the Individual Defendants' Motion for Summary Judgment contains no facts or evidence showing that Thomas was mistreated by Defendants. (ECF No. 64.) Therefore, the Court finds that Plaintiff Thomas has failed to meet her burden of showing that she suffered an injury that would chill a person of ordinary firmness from engaging in a protected activity. Defendants' Motion for Summary Judgment is granted as to Plaintiff Thomas's First Amendment retaliation claim.

With respect to Plaintiffs Boren and Ortega, the third element requires that they show that their arrests and subsequent charges were substantially motivated by their criticism of Defendants' activities. "'Intent to inhibit speech . . . can be demonstrated either through direct or circumstantial evidence.'" *McCook v. Spriner Sch. Dist.*, 44 F. App'x 896, 905 (10th Cir. 2002) (quoting *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999)). Because "proof of an official's retaliatory intent rarely will be supported by direct evidence of such intent," *Poole v. County of Otero*, 271 F.3d 955, 962 (10th Cir. 2001), the Tenth Circuit has set forth a test for examining the issue of intent in the context of a summary judgment motion based on qualified immunity. "First, Defendants must make a *prima facie* showing of the objective reasonableness of the challenged conduct. If Defendants meet their burden of showing objective

reasonableness, we next consider whether the [plaintiff] satisfied the burden of presenting evidence Defendants acted on the basis of a culpable subjective state of mind." *McCook*, 44 F. App'x at 905.

Defendants allege that Plaintiffs were arrested based on Defendants' belief that they had probable cause to arrest Plaintiffs for failure to obey a lawful order. (ECF No. 60 at 14-15.) The criminal complaints filed against Boren and Ortega support this position. (ECF Nos. 60-6 & 60-7.) Plaintiffs admitted in their depositions that they did not, in fact, obey Defendants' orders. (Boren Dep. at 257; Ortega Dep. at 289-90.) Thus, the Court finds that Defendants have made a *prima facie* showing that it was reasonable to believe that they had probable cause to arrest Plaintiffs for failure to obey a lawful order.

Plaintiffs have failed to come forward with any evidence showing that Defendants acted with a culpable state of mind in making the arrests. Plaintiffs' brief on this issue makes only the conclusory statement: "Plaintiffs Boren's and Ortega's arrests were motivated by their protesting of Nixon's and Devine's misconduct" and cites four paragraphs from the statement of facts. (ECF No. 64 at 27.) The evidence cited in support of this statement shows only that Plaintiffs were engaging in protected activity before their arrests. Plaintiffs have presented no evidence suggesting that Defendants did not believe that they had probable cause to arrest Plaintiffs.

"[O]n a motion for summary judgment, 'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record." *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004). The Court finds that Plaintiffs have failed to portray with particularity any factual dispute regarding Defendants' motivation for arresting Plaintiffs Ortega and Boren.

Therefore, Plaintiffs Ortega and Boren have failed to meet their burden with respect to the third prong of their First Amendment retaliation claims.

Because the Court finds that Plaintiffs have not shown that there is a genuine dispute of fact as to whether they suffered a constitutional violation, the Court need not address whether Defendants' action violated a clearly established constitutional right. *See Pearson*, 555 U.S. at 236. Accordingly, the Court concludes that Defendants are entitled to qualified immunity on Plaintiffs' First Amendment retaliation claims. Defendants' Motion for Summary Judgment is granted with respect to such claims.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff Boren and Ortega's conspiracy claims are DISMISSED WITH PREJUDICE;

2. Plaintiff Thomas's race discrimination claim is DISMISSED WITH PREJUDICE;

3. Plaintiff Carillo's First Amendment retaliation claim is DISMISSED WITH PREJUDICE;

4. Defendants' Motion for Summary Judgment (ECF No. 60) is GRANTED IN PART and DENIED IN PART;

5. Judgment shall enter in favor of Defendants on Plaintiffs Boren and Ortega's claims for malicious/vindictive prosecution, destruction and/or hiding of exculpatory evidence, and manufacture of inculpatory evidence;

6. Judgment shall also enter in favor of Defendants on Plaintiffs Ortega, Boren, and Thomas's claims for First Amendment retaliation;

7. This case shall proceed to trial against Defendants Devine and Nixon on all Plaintiffs' excessive force and Plaintiffs Boren, Ortega, and Thomas's false


arrest/unlawful seizure claims.

8. Because Defendants Nixon and Devine did not assert qualified immunity in response to either the excessive force or the false arrest/unlawful seizure claims, Defendants do not have the right to appeal this Order on an interlocutory basis.

Dated this 30th day of January, 2013.

BY THE COURT:

William J. Martinez
United States District Judge