**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-02394-WJM-CBS
(Consolidated with Civil Action Nos. 11-cv-2395, 11-cv-2396 and 11-cv-2397)

ANA ALICIA ORTEGA,
KELLY BOREN,
KRISTAL CARILLO and
SHARELLE C. THOMAS,

    Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, a municipality,
OFFICER RICKY NIXON, in his individual and official capacity, and
OFFICER KEVIN DEVINE, in his individual and official capacity,

    Defendants.

---

**AMENDED ORDER DENYING DEFENDANTS' MOTION PURSUANT TO
FEDERAL RULE OF EVIDENCE 702**

---

In this consolidated civil rights case, Plaintiffs Ann Alicia Ortega, Kelly Boren, Kristal Carillo, and Sharelle Thomas (collectively "Plaintiffs") bring claims against the City and County of Denver and Officers Ricky Nixon and Kevin Devine (collectively "Defendants") arising out of an incident outside of the Denver Diner on July 11, 2009. (Compl. (ECF No. 2).)

Before the Court is Defendants'[1] Motion Pursuant to Federal Rule of Evidence 702 ("Motion"). (ECF No. 72.) The Motion seeks an order precluding certain testimony

---

[1] The Motion was originally filed solely by the City and County of Denver. (ECF No. 72.) However, Defendants Nixon and Devine later joined in the Motion. (ECF No. 79.)

of Plaintiffs' proposed expert witness, Dan Montgomery.  For the reasons set forth below, the Motion is denied.

## I.  LEGAL STANDARD

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2004).  Admission of expert testimony is governed by Rule 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The proponent of the expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

## II.  ANALYSIS

To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field as to make it appear that his or her opinion would rest on substantial foundation and would tend to aid the trier of fact in its search for the truth.  *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004).  In the Motion, Defendants do not challenge Montgomery's qualifications. Defendants acknowledge that Montgomery has been involved in law enforcement for fifty years and was a police chief for twenty-five years.  Thus, the Court has little

difficulty concluding that Montgomery is qualified to serve as an expert witness on police procedures.

Instead of arguing about Montgomery's qualifications, Defendants contend that Montgomery's testimony is not reliable because it is not based on repeatable methods and principles. (ECF No. 72 at 3.) Defendants also argue that Montgomery's testimony would not assist the trier of fact; rather, Defendants contend that it would invade the province of the jury as the finder of fact. (*Id.* at 4.) The Court will address each of these arguments in turn below.

**A.    Reliability**

In determining whether the proffered testimony is reliable, the Court assesses whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology can be properly applied to the facts in issue. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993). The *Daubert* Court listed four factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. *Id.* at 592-94.

Relying primarily on these four *Daubert* factors, Defendants challenge two aspects of Montgomery's proposed testimony: (1) opinions on police procedures; and (2) opinions on internal affairs investigations and discipline. With respect to police procedures, Defendants argue that Montgomery's testimony is unreliable because, during his deposition, he was "unable to describe any reliable, repeatable principles, methods or standards upon which his expert opinions are based, other than merely

noting his fifty years experience as a police officer." (ECF No. 72 at 7.) Defendants contend that Montgomery has admitted that his opinions have not been subjected to any sort of testing, scrutinized through any peer review process, and that others looking at the same facts may arrive at different conclusions. (*Id.* at 8.) With respect to internal affairs investigations and discipline, Defendants contend that Montgomery's opinions are impermissible because they are "based solely and exclusively on his experience." (ECF No. 72 at 11.)

The Court finds that Defendants' arguments do not form a basis for excluding the challenged testimony. Defendants heavy reliance on the *Daubert* factors ignores later Supreme Court precedent which acknowledged that, particularly in non-scientific expert testimony, a different standard may apply. In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court emphasized that the four *Daubert* factors are not a "definitive checklist or test" and that a court's inquiry into reliability must be "tied to the facts of a particular case." *Id.* at 150. In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience," rather than on the *Daubert* factors and scientific foundations. *Id.*; *see also Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235 (10th Cir. 2004). The Supreme Court held that a district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152.

The Court finds that Montgomery's proposed testimony does not lend itself to the *Daubert* factors as it is primarily based on his fifty years experience as a law enforcement officer. Based on *Kumho* and its progeny, however, this does not make the testimony inadmissible. As Plaintiffs point out, courts routinely admit expert

testimony on police procedures in excessive force cases.  In *Zuchel v. City and County of Denver*, 997 F.2d 730 (10th Cir. 1993), the City argued that the district court had improperly permitted an expert to give his opinion about the constitutionality of police standards.  *Id.* at 741.  The Tenth Circuit held: "[c]ourts generally allow experts in this area to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement."  *Id.* at 742; *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004) (allowing testimony that an officer's conduct fell below recognized police standards governing excessive force); *Kopf v.* Skyrm, 993 F.2d 374, 379 (4th Cir. 1993) (same); *Richman v. Sheahan*, 415 F. Supp. 2d 929, 940 (N.D. Ill. 2006) (collecting cases and noting that expert testimony is "routinely allowed" in excessive force cases).

The Court has reviewed Montgomery's expert report and deposition testimony and finds that it is sufficiently reliable so as to satisfy Rule 702's requirements.  No one here disputes Montgomery's experience and training in the areas of police procedures and standards.  Given Montgomery's significant experience in the field of law enforcement, the Court sees no reason to preclude his testimony about police standards and simply because it does not lend itself to application of the *Daubert* factors.

**B.     Assistance to the Finder of Fact**

Defendants also seek to preclude Montgomery's testimony under the theory that it will not assist the jury.  (ECF No. 72 at 9-10.)  Defendants contend that Montgomery's testimony will invade the province of the jury and impede its fact-finding function.  (*Id.* at 12-13.)

5

Ultimately, an expert witness's testimony must assist the jury to be deemed admissible. Fed. R. Evid. 702(a). However, in doing so, an expert witness's testimony may not usurp the jury's fact-finding function. *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988). The line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear; but it is well-settled that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704. When adopting Rule 704, the drafters of the Federal Rules of Evidence provided some guidance as to what is permissible expert testimony:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural object of his bounty to formulate a rational scheme of distribution?" would be allowed.

Thus, the Court must determine whether Montgomery's proposed testimony would assist the jury or intrude on its fact-finding function.

Defendants contend that Montgomery's testimony would tell the jury what result to reach because the "well-established modern police practice standards" upon which his conclusions are based are derived almost entirely from constitutional jurisprudence, which will form the basis for the Court's jury instructions. (ECF No. 72 at 10.) Thus, Defendants contend that permitting Montgomery to offer his opinions on the propriety of

the Defendants' use of force is essentially allowing Montgomery to testify about how the jury should decide the case. (*Id.*)  The Court acknowledges that there will likely be significant overlap between the legal authorities that form the basis for Montgomery's opinions and the Court's final jury instructions.  However, the Court sees a distinction between Montgomery testifying about whether the degree of force used was "reasonable" (which the Court will not permit) and whether the degree of force used was in compliance with well-established modern police standards (which is permissible).

Moreover, the Tenth Circuit has addressed this issue and ruled that testimony from a police procedures expert is admissible, even if it is closely-related to the ultimate issue to be resolved by the jury.  In *Zuchel*, the Tenth Circuit held that expert testimony on whether an officer's conduct fell below generally accepted police procedures was permissible.  The *Zuchel* court noted that the expert "did not give an opinion on whether Officer Spinharney's conduct was unconstitutional.  Rather, he stated his belief that the conduct was inappropriate 'based on [his] understanding of generally accepted police custom and practice in Colorado and throughout the United States.'" 997 F.2d at 742-43.  The same is true of Montgomery's proposed testimony regarding the appropriateness of the use of force in this case.  Therefore, like the expert testimony in *Zuchel*, Montgomery's proposed testimony on the use of force in this case is admissible.

The Tenth Circuit has also repeatedly permitted expert testimony on whether departmental policies comply with generally accepted practices when municipal liability is at stake.  *See Brown v. Gray*, 227 F.3d 1278, 1287 (10th Cir. 2000) (citing approvingly district court's admission of expert testimony that city's training was inadequate); *Allen v. Muskogee, Okla.*, 119 F.3d 837, 842-43 (10th Cir. 1997) (finding that expert testimony on

7

adequacy of police training was sufficient to support a jury's verdict on municipal liability). The fact that an expert opines on causation, without more, is also not grounds to preclude the testimony. *Allen*, 119 F.3d at 844 (approving of expert testimony that the city's lack of training caused the use of excessive force).

Having reviewed Montgomery's expert report and deposition testimony, the Court finds that the proposed testimony will not intrude on the province of the jury and will, instead, be helpful to the jury.[2] However, if Defendants request, the Court will consider giving the jury a cautionary instruction at the relevant point of Montgomery's testimony. *See Zuchel*, 997 F.3d at 743 (approving of district court's instruction to the jury that "what the law is with regard to the use of force will be contained in the instructions I give you.").

Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note. "The court's 'gatekeeping' role favors admissibility of expert testimony when it is reliable and relevant, but any issue of credibility or weight of the expert's testimony belongs to the trier of fact." *Hertz v. Luzenac America, Inc.*, 2011 WL 1480523, *4 (D. Colo. April 19, 2011). "[T]he trial

---

[2] Defendants also move to preclude a specific portion of Montgomery's testimony—whether Defendants Nixon and Devine were intentionally deceptive when they wrote up their reports on the Denver Diner incident. (ECF No. 72-1 at 22-23.) The Court does not believe that Montgomery is qualified to testify about Defendants' intent. Moreover, the Court finds that allowing Montgomery to offer his opinion that Nelson and Devine were intentionally deceptive invades the province of the jury in so far as the jury is tasked with assessing credibility. Plaintiffs acknowledge the troubling nature of this aspect of Montgomery's testimony and, in their Response to the Motion state: "Plaintiffs do not intend to introduce testimony that may intrude on the role of the jury in assessing credibility." (ECF No. 89 at 11.) Plaintiffs contend: "Chief Montgomery will not state any conclusion that the Officers were deceptive or untruthful." (*Id.*) The Court will hold Plaintiffs to this representation and will not allow Montgomery to offer any testimony regarding these credibility-related issues.

court's role as gatekeeper is not intended to serve as a replacement for the adversary system. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Fed. R. Evid. 702 advisory committee's note.

The Court finds that most of the arguments raised by Defendants in the Motion go to the weight the jury should afford Montgomery's testimony rather than the admissibility of such testimony. Nothing in this Order prevents Defendants from vigorously cross-examining Montgomery about the basis for his opinions and the conclusions he draws therefrom.

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion Pursuant to Federal Rule of Evidence 702 (ECF No. 72) is DENIED.

Dated this 5th day of February 2013.

BY THE COURT:

William J. Martinez
United States District Judge

9