**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-02394-WJM-CBS
(Consolidated with Civil Action Nos. 11-cv-2395, 11-cv-2396 and 11-cv-2397)

ANA ALICIA ORTEGA,
KELLY BOREN,
KRISTAL CARILLO and
SHARELLE C. THOMAS,

    Plaintiffs,

v.

THE CITY AND COUNTY OF DENVER, a municipality,
OFFICER RICKY NIXON, in his individual and official capacity, and
OFFICER KEVIN DEVINE, in his individual and official capacity,

    Defendants.

---

**ORDER ON DEFENDANT CITY AND COUNTY OF DENVER'S
MOTION FOR SUMMARY JUDGMENT**

---

In this consolidated civil rights case, Plaintiffs Ann Alicia Ortega, Kelly Boren, Kristal Carillo, and Sharelle Thomas (collectively "Plaintiffs") bring claims against the City and County of Denver ("Denver" or "Defendant"[1]) and Officers Ricky Nixon and Kevin Devine arising out of an incident at the Denver Diner on July 11, 2009.  (Compl. (ECF No. 2).)

Before the Court is Defendant Denver's Motion for Summary Judgment ("Motion").  (ECF No. 59.)  For the reasons set forth below, the Motion is granted in part and denied in part.

---

[1] Although Nixon and Devine are also Defendants to this action, they are not party to the instant Motion.  Therefore, the Court's reference to "Defendant" in this Order includes only the City and County of Denver.

## I. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. FACTUAL BACKGROUND[2]

Plaintiffs Ana Ortega (f/k/a Ana Perez) and Kristal Carrillo were at the Denver Diner on July 12, 2009. (Compl. (ECF No. 2) ¶ 11.) Ms. Carrillo got into a shoving match with another customer and was forcibly taken outside of the Diner by Defendant Nixon, a Denver police officer who was working as an off-duty security officer at the

---

[2] The factual background section of this Order only provides the background for the incident that underlies this action. The particular facts relevant to municipal liability are set forth more fully as appropriate in the analysis section below.

2

Denver Diner.  (*Id*. ¶¶ 16-17.)  Ms. Ortega followed Nixon and Carillo outside.  (*Id*. ¶ 18.)  Officer Devine responded to the scene to assist Nixon.  (*Id*. ¶ 29.)  Shortly thereafter, Plaintiffs Kelly Boren and Sharelle Thomas arrived at the Denver Diner.  (*Id*. ¶ 23.)

During the incidents that followed, Nixon and/or Devine used some amount of force against each of the Plaintiffs.  (*Id*. ¶¶ 17, 35-37, 39, 41.)  Plaintiffs Carrillo, Ortega, and Boren were arrested and criminal charges were filed against them.  Thomas was detained for some period but then released.  (ECF No. 59 at 2.)

Plaintiff then brought this action against Officers Nixon and Devine, as well as Denver, based on the theory of municipal liability.  Plaintiffs' Complaints bring the following claims against Denver:  (1) Excessive Force in violation of 42 U.S.C. § 1983; (2) False Arrest/Unlawful Seizure in violation of 42 U.S.C. § 1983; (3) Retaliation in violation of the First Amendment to the United States Constitution; (4) Destruction and/or Hiding of Exculpatory Evidence in violation of 42 U.S.C. § 1983; (5) Manufacture of Inculpatory Evidence in violation of 42 U.S.C. § 1983; (6) Malicious and Vindictive Prosecution in violation of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983; and (7) Conspiracy to Violate Civil Rights pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.  (Compl. ¶¶ 151-236.)  Plaintiff Thomas also brings a claim for racial discrimination.  (Case No. 1:11-cv-2397-WJM-CBS, ECF No. 2 at 35.)

### III.  ANALYSIS

"A municipality or other local government may be liable under [42 U.S.C. § 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or

causes a person 'to be subjected' to such a deprivation." *Connick v. Thompson*, — U.S. —, 131 S. Ct. 1350, 1359 (2011) (citing *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 692 (1978)). "[U]nder Section 1983, local governments are responsible only for 'their *own* illegal acts.'" *Id*. at 1359 (emphasis in original). "They are not vicariously liable under § 1983 for their employees' actions." *Id.*

To prevail on a municipal liability claim, a plaintiff must establish "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Bd. of Cnty. Comm'rs of Oklahoma Cnty.*, 151 F.3d 1313, 1316 (10th Cir. 1998). The existence of a policy or custom can be established many different ways, including demonstrating the existence of

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784 (10th Cir. 2010) (citation and quotations omitted).

**A.   Effect of Court's January 30, 2013 Order on Denver's Motion for Summary Judgment**

As set forth above, a prerequisite to a finding of municipal liability is a

constitutional violation by an individual police officer. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."); *Olson v. Layton Hills Mall*, 312 F.3d 1305, 1317-18 (10th Cir. 2002) (holding that there is no municipal liability "when there was no underlying constitutional violation by any of its officers."); *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1155-56 (10th Cir. 2001) ("[T]he City cannot be held liable where, as here, the officers did not commit a constitutional violation.").

In its Order on Defendant Nixon and Devine's Motion for Summary Judgment, the Court either dismissed or granted summary judgment in favor of Nixon and Devine on most of Plaintiffs' claims. (ECF No. 103.) The only claims as to which the Court found that Plaintiffs had shown a trial-worthy dispute were Plaintiffs' excessive force claims and Plaintiffs Boren, Ortega, and Thomas's false arrest/unlawful seizure claims. (*Id*. at 19-20.) Because the Court granted summary judgment in favor of Nixon and Devine on Plaintiffs' claims for malicious prosecution, destruction and/or hiding of exculpatory evidence, manufacture of inculpatory evidence, and First Amendment retaliation, Plaintiffs have failed to meet the first prong of the test for municipal liability on these claims. Additionally, with respect to the claims that Plaintiffs' dismissed against Nixon and Devine, such dismissal is dispositive of these same claims against Denver.

Therefore, the Court finds that summary judgment in favor of Denver is appropriate on Plaintiffs' claims for conspiracy, malicious prosecution, destruction

and/or hiding of exculpatory evidence, manufacture of inculpatory evidence, First Amendment retaliation, and Plaintiff Thomas's race discrimination claim. The only claims that remain pending against Denver are Plaintiffs' excessive force claims and Plaintiff Boren, Carillo, and Ortega's claims for false arrest/unlawful seizure.

**B.     Municipal Liability for Excessive Force and False Arrest/Unlawful Seizure**

In the Motion, Denver contends that Plaintiffs cannot show a genuine dispute of fact as to whether an unconstitutional policy or custom caused the alleged constitutional violations that remain pending in this case. (ECF No. 69 at 14-18.) Denver also argues that Plaintiffs have failed to show that a final policymaker was involved with the events at issue here. (*Id*. at 18-19.) Finally, Denver contends that there is no evidence that Plaintiffs' injuries were caused by a failure to train, supervise or discipline Officers Nixon and Devine. (*Id*. at 20-30.)

In opposition to the Motion, Plaintiffs set forth the following alleged deficiencies in Denver's policies and customs, or implementation thereof, that caused the constitutional violations at issue here: (1) failure to investigate and discipline prior instances of excessive force; (2) failure to train appropriately on the use of force; and (3) tolerance of code of silence.[3] The Court will address each of these customs, policies, or practices in turn below.

---

[3] In their Opposition to the instant Motion, Plaintiffs also allege that Defendant failed to adequately train its officers on the duty to disclose exculpatory evidence and that this lack of training caused the facts that formed the basis for Plaintiff Ortega's and Bowen's malicious prosecution claims. (ECF No. 62 at 31, 37.) However, the Court previously granted summary judgment in favor of Defendants Nixon and Devine on Plaintiffs' malicious prosecution claims. (ECF No. 103 at 13-14.) Thus, as set forth above, there can be no municipal liability on these claims.

1. <u>Failure to Train Officers on Proper Use of Force</u>

Plaintiffs allege that Defendant inadequately trains its officers on use of force and that such lack of training led to the excessive force in this case. (ECF No. 62 at 30-31.) "[T]he inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

> To establish a city's liability under 42 U.S.C. § 1983 for inadequate training of police officers in the use of force, a plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Allen v. Muskogee, Okla.*, 119 F.3d 837, 841-42 (10th Cir. 1997).

Defendants Nixon and Devine did not move for summary judgment on Plaintiffs' excessive force case and, in the instant Motion, Denver does not argue that no reasonable juror could find that Nixon and Devine used excessive force. Accordingly, the Court finds that the first prong is satisfied in that a reasonable juror could find that Nixon and/or Devine used excessive force against Plaintiffs.

As to the second prong, the Court has little difficulty concluding that the incident at issue in this case constitutes a usual and recurring situation with which police officers must deal. This incident began as an altercation between two individuals inside a restaurant in which a police officer was serving as an off-duty security guard. That

altercation spilled out into the parking lot where a crowd gathered around. More officers responded to the scene to assist. The Plaintiffs in this case were either involved in the original altercation or members of the crowd. Aside from the degree of force used against Plaintiffs, there does not appear to be anything out of the ordinary about this incident. Thus, a reasonable juror could find that the incident here was a usual and recurring situation for a Denver police officer.

With respect to the third element—that the inadequate training demonstrates deliberate indifference on the party of the city toward persons with whom the police officers come into contact—the Tenth Circuit has held that a "showing of specific incidents which establish a pattern of constitutional violations is not necessary to put the City on notice that its training program is inadequate. Rather, evidence of a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability." *Allen*, 119 F.3d at 842.

In this case, Officers Nixon and Devine both testified that the degree of force used in this incident was in accordance with their training. (Nixon Dep. (ECF No. 62-21) at 149; Devine Dep. (ECF No. 62-19) at 201.) Their supervisor also testified that the officers acted appropriately and within their training. (Dilley Dep. (ECF No. 62-20) at 50.) Nixon testified that the Chief told him that he did nothing wrong in this case but that it "looked bad on video." (Nixon Dep. at 149.) Additionally, Denver's former safety manager, Charlie Garcia, testified that he believed Denver's police officers had used "heavy-handed tactics" since 1993 and that these tactics were a result of the City's training policy. (Garcia Dep. (ECF No. 62-18) at 59.) This evidence could permit a

reasonable juror to find that Denver's training program failed to appropriately teach its officers how to conduct themselves when stopping an altercation and/or managing a crowd. Plaintiffs have therefore satisfied the third element of the failure to train claim.

The fourth element relates to causation and is easily satisfied in this case. As stated above, Nixon and Devine both testified that the amount of force that they used in this incident was in accord with how they were trained by Denver. Therefore, a reasonable juror could find that, had Denver implemented a different training policy on the use of force, Plaintiffs would not have been subjected to the amount force used in this case.

Because Plaintiffs have met their burden with respect to each of the four prongs of their failure to train claim, the Court finds that summary judgment is inappropriate on this theory of municipal liability.

2.   <u>Failure to Investigate and Discipline Prior Instances of Excessive Force</u>

Plaintiffs allege that Denver failed to adequately investigate citizen complaints of its officers use of excessive force and also that it failed to discipline officers for use of excessive force. (ECF No. 62 at 28-29.)

Because Plaintiffs cannot point to an official Denver policy of failure to investigate and failure to discipline, they must show that these are such widespread practices that are "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691; *see also Cannon v. City and Cty. of Denver*, 998 F.2d 867, 877 (10th Cir. 1993). Plaintiffs have met that burden here.[4]

---

[4] Plaintiffs rely heavily on the affidavits of twenty-seven similarly situated community members that they submitted in support of their opposition to the Motion. (ECF No. 62 at 28-

Denver's former independent monitor, Richard Rosenthal, testified that Denver had a "systemic problem" of officers not being held accountable for their uses of force. (Rosenthal Dep. (ECF No. 62-2) at 54.) Rosenthal recounted "a number of cases" that gave him "great concern" about whether officers were properly being held accountable for their actions. (*Id*. at 57.)

With respect to the failure to adequately investigate citizen complaints, Rosenthal testified that he repeatedly observed the intake officers at the Internal Affairs Bureau ("IAB") reject citizen complaints outright. (*Id*. at 101-02.) Plaintiffs have also presented evidence of specific instances in which IAB has failed to adequately investigate a citizen complaint of excessive force and the implicated officer was not disciplined. (Graber Aff. (ECF No. 62-35) ¶¶ 24-28; Landau Aff. (ECF No. 62-23) ¶¶ 4-8.) The Court finds that this evidence is sufficient to allow a reasonable juror to find that Denver's failure to adequately investigate citizen's excessive force complaints and to discipline officers implicated therein was so widespread as to constitute a custom.

The Court also finds that Plaintiffs have presented evidence showing that Denver was deliberately indifferent to this custom. Denver's former safety manager testified that the amount of time that it took IAB officers to investigate a citizen complaint was "insanity". (Garcia Dep. at 33.) Rosenthal testified that he has been vocally critical of how long IAB took to investigate complaints. (Rosenthal Dep. at 113-14.) Moreover,

---

29.) Defendant has moved to strike some of these affidavits based on the timeliness of the disclosure of these individuals. (ECF No. 67 at 11 n.2; ECF No. 85.) In the instant Order, the Court will rely only on the affidavits of the witnesses that were undisputedly timely disclosed. Because the Court need not rely on the affidavits to which Denver has objected, it will not resolve at this time the issue of whether the witness disclosed on May 18, 2012 will be permitted to testify at trial.

Plaintiffs' expert on police practices and procedures, Dan Montgomery, opined that the police standard length for an IAB investigation was 45 days and, in 2010, Denver's average investigation took 105 days. (Montgomery Report (ECF No. 62-6) at 29.) Based on this evidence, a reasonable juror could conclude that Denver was aware of its custom of processing IAB complaints too slowly and failing to discipline implicated officers and was deliberately indifferent to this custom.

The Court also finds that Plaintiffs have presented sufficient evidence that their injuries were caused by Denver's practices. Plaintiffs have shown that Nixon was involved with an incident in which force was used against Alex Landau in January 2009. Landau filed an IAB complaint alleging that Nixon used excessive force against him. (Landau Aff. ¶ 4.) The IAB intake officer accused Landau of bringing false charges and rejected his claim. (*Id*. ¶ 8.) Despite Landau's complaint, Nixon was permitted to continue to his duties as a patrol officer. (Whitman Dep. (ECF No. 62-4) at 137-38.) A reasonable juror could find that, had Landau's IAB complaint been investigated within the standard of 45 days, it would have been resolved prior to the incident at issue here. A reasonable juror could also find that, had Nixon been disciplined as a result of that investigation, he would not have been present to inflict the harm alleged by Plaintiffs in this case.

In sum, the Court finds that Plaintiffs have met their burden with respect to their claim for municipal liability based on Denver's custom of failing to adequately and timely investigate citizen complaints for excessive force and to timely and properly discipline the officers implicated therein. Accordingly, Defendant's Motion for Summary Judgment is denied on this theory of municipal liability.

### 3. Tolerance of the Code of Silence

Plaintiffs next argue that Denver has a custom of tolerating its police officers' "code of silence" with respect to uses of force. (ECF No. 62 at 31-32.) Plaintiffs contend that Denver officers routinely under-report or fail to report their own uses of force and customarily fail to report other officers' inappropriate uses of force. (*Id*.) As Plaintiffs do not point to a formal policy regarding the reporting of uses of force, the "custom" analysis described above applies here. The Court finds that Plaintiffs have presented sufficient evidence to permit a reasonable juror to find that Denver has a custom of failing to report uses of force that resulted in the harms alleged by Plaintiffs in this case.

With respect to the existence of a custom, Garcia testified that, during his time as Denver's Safety Manager, he observed a "pattern" of failure to report uses of force. (Garcia Dep. at 37.) Plaintiffs also point to a custom in the Denver Police Department in which only the officer who actually uses force is required to complete a report on the incident. (Rosenthal Dep. at 78; Quinones Dep. (ECF No. 62-22) at 136; Clark Dep. (ECF No. 62-12) p. 111.) Although there is a formal policy that requires all officers that observe excessive force to report it, there is evidence in the record showing that no one in the Denver Police Department expects officers other than the one(s) who applied force to actually follow that policy. (*Id*.) Rosenthal testified: "[W]e've never had a Denver police officer report another Denver police officer for discourtesy in a formal Internal Affairs case." (Rosenthal Dep. at 78.)

In this case, a number of officers observed the use of force by Nixon and Devine but none completed reports on such force or came forward with information regarding

the incident until they were questioned by IAB during its investigation.  (Garcia Dep. at 117; Clark Dep. at 110-11.)  Based on this and other evidence in the record, a reasonable juror could find that Denver has a custom of tacitly approving of, or at the very least of acquiescing to, a pattern of conduct within the Department whereby police officers routinely fail to report either their own or other officer's uses of force.

There is also evidence that would permit a reasonable juror to find that Denver was deliberately indifferent to such custom.  Division Chief David Quinones testified that he was "not concerned" by the fact that none of the officers that observed the incidents at issue here reported Nixon and Devine's conduct.  (Quinones Dep. at 135.)  Quinones felt that the incident was properly reported and documented because either Nixon or Devine had completed a use-of-force report.  (*Id*.)  Shanna Clark, a Sergeant in Internal Affairs division, testified that whether or not other officers were reporting uses of force that they observed was not a concern for her.  (Clark Dep. at 111.)  When investigating the Denver Diner incident, she did not look into whether any of the officers that assisted Nixon and Devine had reported the use of force that they observed.  (*Id*. at 110.)  From this evidence, a reasonable juror could conclude that Defendant was deliberately indifferent to the Denver Police Department's custom of failure to report excessive force by other officers.

There is also sufficient evidence in the record to permit a reasonable juror to find that this custom caused Plaintiffs' injuries in this case.  Rosenthal testified that Denver's policy requiring only the officer that used force to report such use "leads to under-reporting" of the amount of force used.  (Rosenthal Dep. at 355.)  Plaintiff's expert opined that the failure to require other officers to report uses of force, and the failure to

13

report or the under-reporting of the their own uses of force, caused a culture of dishonesty. (Montgomery Report at 35.) A reasonable juror could therefore find that, but for Denver's custom of allowing officers to under-report or not report use of force by Denver Police Officers, Plaintiffs would not have been subjected to the degree of force used against them in this case.

In sum, the Court finds that Plaintiffs have met their burden with respect to their claim for municipal liability based on Denver's custom of tolerating the under-reporting or failure to report uses of force. Accordingly, Defendant's Motion for Summary Judgment is denied on this theory of municipal liability.

### C.     Municipal Liability for False Arrest/Unlawful Seizure

Plaintiffs' Complaint brings a municipal liability claim against Denver not only for the excessive force used by Nixon and Devine, but also for the false arrest/unlawful seizure of Plaintiffs Boren, Ortega, and Thomas. (Compl. pp. 34-35.) The Complaint alleges that these Plaintiffs' false arrest/unlawful seizure was caused by Denver's "unconstitutional policy, procedure, custom and/or practice". (*Id*. ¶ 174.) The Complaint also contains a series of factual allegations regarding prior instances in which citizens were arrested or detained by Denver police officers without probable cause. (*Id*. ¶¶ 137-139; 146-50.)

The instant Motion for Summary Judgment states that Defendant "moves for summary judgment with respect to the municipal liability claim brought by Plaintiffs." (ECF No. 59 at 1.) However, in the brief that follows, none of the facts or argument relate to municipal liability for Plaintiffs' false arrest/unlawful seizure claims. The brief is focused primarily on whether any Denver custom, policy, or failure to train caused

Plaintiffs' excessive force injuries, though there is also a brief mention of whether any Denver policy resulted in Plaintiffs being deprived of exculpatory evidence in their criminal cases. (*Id.* at 30.) Defendant fails to make any argument in its Motion with respect to whether the injuries that resulted from Plaintiffs' false arrest/unlawful seizure were or were not caused by Denver. As such, the Court finds that Denver did not move for summary judgment on Plaintiffs Boren, Ortega, and Thomas's municipal liability for false arrest/unlawful seizure claims. Thus, these claims remain pending in this case.[5]

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant City and County of Denver's Motion for Summary Judgment (ECF No. 59) is GRANTED IN PART and DENIED IN PART;

2. Plaintiffs' municipal liability claims related to Plaintiffs' claims for conspiracy and race discrimination are DISMISSED WITH PREJUDICE;

3. Summary judgment is GRANTED in favor of Denver on Plaintiff's municipal liability claims related to Plaintiffs' claims for First Amendment retaliation, malicious/vindictive prosecution, destruction and/or hiding of exculpatory evidence, and manufacture of inculpatory evidence;

---

[5] The Court notes that there is evidence in the record to support municipal liability for Plaintiffs Ortega, Boren, and Thomas's false arrest/unlawful seizure claims. Garcia testified that Denver has an unwritten policy of bringing charges against any individual against whom any force is used. (Garcia Dep. at 40.) Garcia testified that this officers were trained to bring charges such as resisting arrest or interference to "cover" for the use of force. (*Id.*) With respect to whether this custom caused Plaintiffs' injuries in this case, Garcia testified that, at least as to Plaintiff Boren, the charges brought against her were "not appropriate". (*Id.* at 43.) Thus, even if Denver had moved for summary judgment on this claim, the Court would most likely have denied the motion.

4. Summary judgment is DENIED on Plaintiffs' municipal liability claims related to the use of excessive force and false arrest/unlawful seizure. Each of these claims shall proceed to trial.

Dated this 6th day of February, 2013.

BY THE COURT:

William J. Martinez
United States District Judge